UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————

BRIANA FARKAS,

        Plaintiff,        Case No.

vs.

DKG, LLC d/b/a THE LEARNING
EXPERIENCE OF TROY and
KELLY GVOZDIC, jointly and severally,

        Defendants.
_____/
Carol A. Laughbaum (P41711)
Attorney for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
claughbaum@sterlingattorneys.com
_____/

## COMPLAINT AND JURY DEMAND

**There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in this Complaint.**

Plaintiff, Briana Farkas, by her attorneys Sterling Attorneys at Law, P.C., for her Complaint against Defendants, submits the following:

1.    This is an action for pregnancy and sex discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq,* as amended by the Pregnancy Discrimination Act, 42 USC 2000e(k)*;* for disability discrimination

in violation of Michigan's Persons With Disabilities Civil Rights Act, MCL 37.1101 *et seq.* and the Americans with Disabilities Act of 1990, 42 USC 12111 *et seq.*; and unlawful retaliation under all those Acts.

2. Plaintiff's claims arise out of her employment relationship with Defendants.

## Jurisdiction and Parties

3. Plaintiff Briana Farkas ("Plaintiff," "Farkas," or "Plaintiff Farkas") resides within the Eastern District of Michigan.

4. Defendant DKG, LLC d/b/a The Learning Experience of Troy ("TLE" or "Defendant TLE") is a Michigan corporation that conducts business and maintains its principal place of business within the Eastern District of Michigan.

5. Defendant Kelly Gvozdic ("Gvozdic" or "Defendant Gvozdic") is the owner and business manager of Defendant TLE and resides within the Eastern District of Michigan.

6. The events giving rise to this action occurred within the Eastern District of Michigan.

7. Plaintiff has properly and timely filed her federal claims following issuance by the EEOC of her Notice of Right to Sue, which was mailed to her on or about February 3, 2022.

8. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights) and 28 USC 1367 (supplemental jurisdiction).

## Background Facts

9. Defendant TLE is a daycare and early childhood education center located in Troy, Michigan.

10. Defendant Gvozdic is the owner and business manager of Defendant TLE.

11. On or about March 20, 2019, Plaintiff Farkas became employed by Defendants as Assistant Center Director.

12. Throughout her employment with Defendants, Plaintiff performed her job duties in a manner that was satisfactory or better.

13. Effective May 13, 2020, and following a 6-week shut-down of TLE due to Covid-19, Defendants recalled Plaintiff to work with a salary increase.

14. In approximately December 2020, Plaintiff became pregnant with a due date in September 2021.

15. Plaintiff's pregnancy was high-risk, and she informed Defendants of that fact.

16. On or about June 17, 2021 Plaintiff Farkas saw her OB-GYN, who put her on the following work restrictions: no more than 8-hour shifts with a 15-minute break every 4-hours, and no heavy lifting of over 20 pounds.

3

17. That day, Plaintiff Farkas emailed her doctor's restrictions to Defendants, seeking those accommodations.

18. The very next day, on June 18, 2021, Defendant Gvozdic and Plaintiff's immediate supervisor, Center Director Melissa Newton, informed Plaintiff Farkas that the terms of her employment were being changed, and she had two choices: accept a demotion, or submit her resignation.

19. On June 21, 2021, Defendants provided Plaintiff with a letter which set forth the proposed changes.

20. The proposed changes included a demotion from Assistant Director to Teacher; a change in Plaintiff's compensation from salaried to hourly with a significant pay cut; and diminished TLE tuition benefits for her children.

21. The letter also provided that if Plaintiff declined the "offer" but failed to submit a resignation letter by July 1, 2021, her employment with TLE would be terminated.

22. On Friday, June 25, 2021, Plaintiff emailed Ms. Newton stating that she felt the proposed changes to her employment violated laws prohibiting pregnancy and disability discrimination.

23. On Monday, June 28, 2021, Defendant Gvozdic called Plaintiff into a meeting, stated that she was "disappointed" to receive Plaintiff's discrimination complaint, and told Plaintiff she was fired.

24. During that meeting, prior to telling Plaintiff that she was fired, Gvozdic repeatedly attempted to get Plaintiff to say she was quitting. Plaintiff refused, and reiterated that she was neither agreeing to the demotion, or quitting/resigning.

25. Gvozdic initially advised Plaintiff that her employment was over at the end of the month (June 30, 2021), and that Plaintiff could work the remaining two days or leave immediately.

26. Defendant Gvozdic then provided Plaintiff with her file, and instructed Plaintiff to leave.

27. Plaintiff's termination was involuntary; Defendants terminated or constructively terminated her employment.

## COUNT I

*Sex/Pregnancy Discrimination in Violation of*
*Michigan's Elliott-Larsen Civil Rights Act (as to all Defendants) and Title VII (as to Defendant TLE, only)*

28. Plaintiff repeats and realleges the above paragraphs as though set forth in full again here.

29. Plaintiff was an employee and Defendants TLE and Gvozdic were her employers, covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq.*

30. Plaintiff was an employee and Defendant TLE was her employer covered by and within the meaning of Title VII of the Civil Rights Act of 1964,

5

42 USC 2000e *et seq.* as amended by the Pregnancy Discrimination Act, 42 USC 2000e(k).

31. The ELCRA and Title VII prohibit sex discrimination, which includes discrimination on the basis of pregnancy.

32. Defendants, by their agents, made decisions negatively affecting the terms, benefits and conditions of Plaintiff's employment, and terminated Plaintiff, due to her pregnancy.

33. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

34. As a direct and proximate result of those actions, the terms, conditions and benefits of Plaintiff's employment were adversely affected.

35. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits including loss of health care and tuition benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT II

*Disability Discrimination in Violation of Michigan's Persons with Disabilities Civil Rights Act (as to all Defendants) and the ADA (as to Defendant TLE, only)*

36. Plaintiff repeats and realleges the above paragraphs above as though set forth in full again here.

37. Plaintiff was an employee and Defendants were her employers covered by and within the meaning of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq*.

38. Plaintiff was an employee and Defendant TLE was her employer covered by and within the meaning of the Americans with Disabilities Act (ADA), 42 USC 12101, *et seq*.

39. Given Plaintiff's high-risk pregnancy, Plaintiff was a qualified individual with a disability for purposes of the PWDCRA and the ADA.

40. The PWDCRA and the ADA prohibit discrimination against an employee who has a disability, is regarded as having a disability, or who has a history of having a disability.

41. Both Acts also requires an employer to accommodate an employee's known disability.

42. Defendants knew or had reason to know of Plaintiff's disability.

43. Defendants discriminated against Plaintiff with respect to the terms, benefits, conditions, and privileges of her employment because of

Plaintiff's disability, perceived disability, or history of having a disability, in violation of the PWDCRA and ADA.

44. Defendants failed to accommodate Plaintiff's disability.

45. Defendant terminated Plaintiff due, at least in part, to her disability.

46. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless disregard to the rights and sensibilities of Plaintiff.

47. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits including loss of health care and tuition benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

## COUNT III

*Retaliation in Violation of Michigan's ELCRA and PWDCRA (as to all Defendants) and Title VII and the ADA (as to Defendant TLE, only)*

48. Plaintiff repeats and realleges the above paragraphs as though set forth in full again here.

49. The above named Acts (ELCRA, PWDCRA, Title VII, ADA) prohibit retaliation against a person who engages in protected activity, including requesting an accommodation.

50. Plaintiff engaged in activities protected by those Acts when she requested an accommodation and complained about unlawful pregnancy and disability discrimination.

51. Defendants' retaliatory treatment of Plaintiff as set forth above, including terminating Plaintiff's employment, was in violation of the anti-retaliation provisions of those Acts.

52. As a direct and proximate result of the Defendants' wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits including loss of health care and tuition benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

**RELIEF REQUESTED**

For all the above reasons, Plaintiff Briana Farkas demands judgment against the Defendants as follows:

A. **Legal Relief:**

1. Compensatory damages in whatever amount she is found to be entitled;

2. Exemplary damages in whatever amount she is found to be entitled;

3. Punitive damages in whatever amount she is found to be entitled;

4. A judgment for lost wages and benefits in whatever amount she is found to be entitled;

5. An award of interest, costs and reasonable attorney fees; and

6. Whatever other legal relief appears appropriate at the time of final judgment.

B. **Equitable Relief:**

1. An injunction out of this Court prohibiting any further acts of wrong-doing;

2. An award of interest, costs and reasonable attorney fees; and

3. Whatever other equitable relief appears appropriate at the time of final judgment.

## JURY DEMAND

Plaintiff Briana Farkas, by her attorneys Sterling Attorneys at Law, P.C., requests a trial by jury.

        Respectfully submitted,

        STERLING ATTORNEYS AT LAW, P.C.

        By:  /s/Carol A. Laughbaum
             Carol A. Laughbaum (P41711)
             Attorney for Plaintiff
             33 Bloomfield Hills Pkwy., Ste. 250
             Bloomfield Hills, MI 48304
             (248) 644-1500

Dated:  February 8, 2022